John H. Weston, CA Bar No. 46146
*johnhweston@wgdlaw.com*
Jerome H. Mooney, CA Bar No. 199542
*jerrym@mooneylaw.com*
G. Randall Garrou, CA Bar No. 74442
*randygarrou@wgdlaw.com*
Weston, Garrou & Mooney
12121 Wilshire Boulevard, Suite 525
Los Angeles, California 90025
Tel: (310) 442-0072
Fax: (310) 442-0899

*To be Admitted Pro Hac Vice:*
Richard M. Hagstrom, MN Bar No. 39445
*rhagstrom@hjlawfirm.com*
Michael R. Cashman, MN Bar No. 206945
*mcashman@hjlawfirm.com*
Gregory S. Otsuka, MN Bar No. 0397873
*gotsuka@hjlawfirm.com*
8050 West 78th Street
Edina, Minnesota  55439
Tel: (952) 941-4005
Fax: (952) 941-2337

*Attorneys for Plaintiffs and Proposed Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JAMES F. BLISS and THOMAS H. PRICE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>ZF FRIEDRICHSHAFEN AG, ZF TRW AUTOMOTIVE HOLDINGS CORP., TRW AUTOMOTIVE INC., TRW AUTOMOTIVE U.S. LLC, TRW | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1  VEHICLE SAFETY SYSTEMS INC.,
2  HONDA MOTOR CO., LTD.,
   AMERICAN HONDA MOTOR CO.,
3  INC., HONDA OF AMERICA MFG.
   INC., HONDA R&D CO., LTD.,
4  HYUNDAI MOTOR GROUP,
5  HYUNDAI MOTOR CO., and
   HYUNDAI MOTOR AMERICA,
6
7                    Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NATURE OF CLAIMS .................................................................................1

JURISDICTION AND VENUE .....................................................................5

THE PARTIES ..............................................................................................6

**I.    TRW DEFENDANTS** .....................................................................6

**II.   AUTOMAKER DEFENDANTS** .....................................................8

    A.    Honda Defendants.................................................................8

    B.    Hyundai Defendants.............................................................9

**III.  PLAINTIFFS** ...............................................................................**10**

GENERAL FACTUAL ALLEGATIONS ....................................................10

I.    Definitions    ......................................................................10

II.   TRW ACUs Have a Common, Uniform Defect ...........................12

    A.    Defendants' Knowledge of the Defect................................12

III.  The Automaker Defendants Sold Their Vehicles As "Safe" and
      "Reliable"    ......................................................................19

IV.   The Automaker Defendants' Failure to Issue Recalls, Issuance
      of Late and Inadequate Recalls, and Failure to Assist Impacted
      Consumers    ......................................................................21

    A.    Failure to Provide Replacement Vehicles...........................22

TOLLING OF THE STATUTE OF LIMITATIONS ...................................22

    Fraudulent Concealment.............................................................22

    Estoppel .....................................................................................23

    Discovery Rule ...........................................................................24

CLASS ACTION ALLEGATIONS ..............................................................24

    I.     The Consumer Classes ........................................................25

    II.    Numerosity and Ascertainability ........................................25

    III.   Predominance of Common Issues........................................26

    IV.    Typicality    ........................................................................28

    V.     Adequate Representation .....................................................28

i

VI.    Superiority  ..................................................................................28

**CLAIMS FOR RELIEF** ..............................................................................**30**

**I.    Nationwide Claims** ...............................................................................**30**

COUNT 1 ...........................................................................................30

Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), Against the TRW
Defendants and the Hyundai Defendants (On behalf of the
Nationwide Class) ............................................................................30

COUNT 2 ...........................................................................................38

Violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), Against the TRW
Defendants and Hyundai Defendants (On behalf of the
Nationwide Class) ............................................................................38

COUNT 3 ...........................................................................................41

Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301
*et seq.,* Against the Automaker Defendants (On behalf of the
Nationwide Class)  ...........................................................................41

COUNT 4 ...........................................................................................44

Fraudulent Concealment, Against the TRW Defendants (On
behalf of the Nationwide Class) ........................................................44

COUNT 5 ...........................................................................................47

Fraudulent Concealment, Against the Automaker Defendants (On
behalf of the Nationwide Class) ........................................................47

COUNT 6 ...........................................................................................50

Unjust Enrichment, Against the Automaker Defendants (On
behalf of the Nationwide Class) ........................................................50

**II.    California Sub-Class Claims** ................................................................**51**

COUNT 7 ...........................................................................................51

Violation of the Song-Beverly Consumer Warranty Act for
Breach of the Implied Warranty of Merchantability, Cal. Civ.
Code §§ 1791.1 and 1792, against Honda Defendants  (On behalf
of Song-Beverly Sub-Class).............................................................51

COUNT 8 ...........................................................................................53

California Breach of Express Warranty, Cal. Com. Code §§ 2313
and 10210, Against the Honda Defendants  (On behalf of the
California Sub-Class) ........................................................................53

COUNT 9 ................................................................57

Violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* against the Honda Defendants (On behalf of the California Sub-Class) ................................57

COUNT 10 ................................................................61

Violation of Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* , Against the Honda Defendants (On behalf of the California Sub-Class) ................................61

**III. Minnesota Sub-Class Claims** ................................**64**

COUNT 11 ................................................................64

Breach of the Implied Warranty of Merchantability, Against Hyundai Defendants  (On behalf of the Minnesota Sub-Class) ................................64

PRAYER FOR RELIEF ................................................................65

DEMAND FOR JURY TRIAL ................................................................66

Plaintiffs, based on personal knowledge as to themselves, and upon information and belief as to all other matters, allege as follows:

## NATURE OF CLAIMS

1.     Anyone who drives and rides in motor vehicles relies on the manufacturers of their vehicles and the manufacturers of critical safety devices in the vehicles to make products that will protect them in the event of a crash. They particularly rely on manufacturers of critical safety features, such as airbags, to keep them safe. Plaintiffs bring this lawsuit against manufacturers of airbags and automakers who installed those airbags in their vehicles. Those airbags were defective such that they did not protect the vehicles' occupants, but instead put them at risk of death or serious injury.

2.     Defendants ZF Friedrichshafen AG, ZF TRW Automotive Holdings Corp., and its related entities (collectively referred to as "TRW") designed and manufactured defective airbag control units ("ACUs"), which were equipped and installed in certain vehicles manufactured by Honda, Acura, Hyundai, Kia, Mitsubishi, Fiat Chrysler, and Toyota ("original equipment manufacturers" or "OEMs").

3.     A properly-functioning ACU will detect a crash and send a signal that inflates the airbag and engages the seatbelt pretensioner, two critical safety components of a vehicle.

4.     The ACUs manufactured by TRW suffer from a  defective design in that they are unreasonably susceptible to damage or electrical overstress conditions, which prevent the vehicles' airbags from deploying and the seatbelt pretensioners from engaging during a collision, thereby failing to protect vehicle occupants in a crash. Honda and Hyundai (as defined herein, and together, the "Automaker Defendants") manufactured, sold, and leased vehicles containing TRW's defective ACUs. Moreover, the Automaker Defendants concealed the defect and knowingly misrepresented that their vehicles were safe to consumers and the public.

5.    TRW's defective ACUs at issue in this litigation share a common, uniform design defect: their defective design makes the application-specific integrated circuit ("ASIC") unreasonably susceptible to damage or electrical overstress ("EOS"), which in turn prevents the ACU from properly communicating with the airbags and seatbelt pretensioners during collisions (the "ACU Defect").

6.    When the ASIC functions properly, the ACU detects the severity of a crash, deploys the airbag if necessary, and engages the seatbelt pretensioners. When the ASIC fails, it can prevent airbag deployment and seatbelt pretensioners engagement or otherwise affect the proper operation of the ACU.

7.    According to a National Highway Traffic Safety Administration ("NHTSA") investigation, the TRW ASIC is designed without sufficient electrical circuitry protection to allow electrical signals to enter the ACU via sensor wiring and thereby cause an EOS. The ACU Defect can also result in the ACU's inability to be read with an Event Data Recorder ("EDR"). As a result of this common, uniform ACU Defect, TRW ACUs often fail to perform as they should. Instead of protecting a vehicle's occupants during an accident by deploying airbags and seatbelt pretensioners, the defective TRW ACUs often fail to send a signal to deploy airbags and engage seatbelt pretensioners, causing occupants to suffer serious bodily injury and death. As of April 2019, TRW's Defective ACUs have been responsible for at least four deaths and six serious injuries.

8.    Automaker Defendants that purchased TRW's Defective ACUs were involved in their design and testing and knew or should have known of the common, uniform design defect of the TRW ACUs.

9.    Apart from the notice and warnings they received through their interactions with TRW, internal review, design approval, and testing, the Automaker Defendants additionally gained knowledge of the ACU Defect through various customer complaints and incidents of non-deployment. For example, TRW and

Hyundai knew, discussed, and investigated airbag non-deployment incidents as early as August 2011.

10. The Automaker Defendants also had knowledge that TRW's ACUs were experiencing the same problems in other automakers' vehicles. Indeed, no later than January 2016, TRW directly reached out to the Automaker Defendants regarding the nature of the ACU Defect.

11. TRW and its OEM customers knew of airbag failures in the field no later than July 28, 2013, when a TRW airbag failed to deploy in a 2012 Kia Forte, in San Leandro, CA. Another airbag non-deployment incident took place on December 27, 2013 involving a 2011 Hyundai Sonata in Myrtle, MS, and another occurred on March 13, 2016 involving a 2011 Hyundai Sonata in Omaha, NE. In each of these incidents, the ACU Defect led to a fatality.

12. Fiat Chrysler then issued a public recall of the Defective ACUs in the United States in September 2016, putting all OEMs, including the Automaker Defendants, on further notice of the defect.

13. Despite Fiat Chrysler's initial recall and their independent concerns about the ACU Defect, Defendants utterly failed to take reasonable, let alone sufficient measures to investigate the defect or protect owners, lessees, and the general public.

14. As overwhelming evidence of the defect grew, Defendants did not issue recalls, warn consumers, or otherwise protect them from the risk, through, for example, systematic loaner vehicle programs. Indeed, it was not until 2018 that Kia and Hyundai finally issued limited recalls. And Honda and Toyota continue to refuse to recall their affected vehicles, despite knowing they contain the same deadly ACU Defect.

15. The Automaker Defendants' failure and/or delay in issuing recalls and providing replacement parts is significant because it exposes owners, lessees, drivers,

passengers, and, indeed, the general public, to an ongoing and unnecessary risk of harm.

16.    TRW and the Automaker Defendants knew, and should have known, that the TRW ACUs installed in millions of vehicles were defective. By concealing their knowledge of the nature and extent of the ACU Defect from the public, while continuing to advertise their products as safe and reliable, Defendants demonstrated a blatant disregard for public welfare and safety. Moreover, Defendants violated their affirmative duty, imposed under the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), to promptly advise customers about known defects.

17.    As a result of this misconduct, Plaintiffs and Class members were harmed and suffered actual damages. Plaintiffs and Class members did not receive the benefit of their bargain; rather, they purchased or leased vehicles that are of a lesser standard, grade, and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Purchasers and lessees of the Class Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the ACU Defect been disclosed. Plaintiffs and Class members were deprived of a safe, defect-free ACU installed in their vehicles, and Defendants unjustly benefited from their unconscionable delay in recalling their defective products, as they simultaneously avoided incurring the costs associated with recalls and installing replacement parts for many years.

18.    Plaintiffs and Class members also will likely suffer damages in the form of out-of- pocket and loss-of-use expenses and costs, including, but not limited to, expenses and costs associated with taking time off from work, paying for rental cars or other transportation arrangements, and childcare. Also, as a direct result of misconduct by Defendants, each Plaintiff and Class member will likely incur out-of-pocket economic damage by virtue of their incurring the expense of taking the time

1  to eventually bring their cars in for repairs, once all Automaker Defendants issue

2  recalls.

3      19.  Plaintiffs and Class members also suffered damages as a result of

4  Defendants' concealment and suppression of the facts concerning the safety, quality,

5  and reliability of their vehicles with defective TRW ACUs. Defendants' false

6  representations and omissions concerning the safety and reliability of those vehicles

7  and their concealment of the known safety defects plaguing their vehicles and

8  brands, caused Plaintiffs and Class members to purchase, lease, or retain vehicles of

9  diminished value.

10  **JURISDICTION AND VENUE**

11      20.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because

12  Plaintiffs' RICO and Magnusson-Moss claims arise under federal law. Also,

13  jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28

14  U.S.C. § 1332(d), because members of the proposed Classes are citizens of states

15  different from each Defendant's home state, and the aggregate amount in controversy

16  exceeds $5,000,000, exclusive of interest and costs. Further, greater than two-thirds

17  of Class members reside in states other than the states in which Defendants are

18  citizens. Moreover, this Court has supplemental jurisdiction over Plaintiffs' state law

19  claims under 28 U.S.C. § 1367.

20      21.  This Court has personal jurisdiction over Plaintiffs because Plaintiffs

21  submit to the Court's jurisdiction. This Court has personal jurisdiction over

22  Defendants, because they conduct substantial business in this District; some of the

23  actions giving rise to the Complaint took place in this District; and some of

24  Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or

25  carrying on a business or a business venture in this state or having an office or

26  agency in this state, committing a tortious act in this state, and causing injury to

27  property in this state arising out of Defendants' acts and omissions outside this state;

28  and at or about the time of such injuries Defendants were engaged in solicitation or

service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

22. Venue lies within this judicial district under 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendants' contacts are sufficient to subject them to personal jurisdiction in this District, and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. § 1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred, among other places, in this District.

## THE PARTIES

### I. TRW DEFENDANTS

23. Defendant ZF Friedrichshafen AG ("ZF TRW") is a corporation with its principal place of business in Friedrichshafen, Baden-Wurttemberg, Germany. ZF TRW is a worldwide supplier of driveline and chassis technology for cars and commercial vehicles, including active and passive safety technology. ZF TRW, either directly or through its wholly-owned subsidiaries, manufactures ACUs for distribution in the United States, including the ACUs at issue in this litigation. ZF TRW delivers its products, including the ACUs at issue in this litigation, into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

24. ZF TRW Automotive Holdings Corp. ("TRW Automotive Holdings") is a subsidiary of ZF TRW with its principal place of business in Livonia, Michigan. TRW Automotive Holdings is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Automaker Defendants. TRW Automotive Holdings sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation. TRW Automotive Holdings delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

25. TRW Automotive Inc. ("TRW Automotive") is a subsidiary of ZF TRW with its principal place of business in Livonia, Michigan. TRW Automotive is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Automaker Defendants. TRW Automotive sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation. TRW Automotive delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

26. TRW Automotive U.S. LLC ("TRW Automotive U.S.") is a subsidiary of TRW Automotive with its principal place of business in Livonia, Michigan. TRW Automotive U.S. is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Automaker Defendants. TRW Automotive U.S. sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation. TRW Automotive U.S. delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

27. TRW Vehicle Safety Systems Inc. ("TRW Vehicle Safety Systems") is a subsidiary of TRW Automotive Holdings with its principal place of business in Farmington Hills, Michigan. TRW Vehicle Safety Systems is an American supplier of automotive systems, modules, and components to automotive OEMs, including the Automaker Defendants. TRW Vehicle Safety Systems sells, designs, manufactures, tests, markets, and distributes ACUs in the United States, including the ACUs at issue in this litigation. TRW Vehicle Safety Systems delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

28. Defendants ZF TRW, TRW Automotive Holdings, TRW Automotive, TRW Automotive U.S., and TRW Vehicle Safety Systems are collectively referred

to as "TRW" or the "TRW Defendants."   TRW is the manufacturer of all the Defective ACUs that are the subject of this Complaint.

## II.    AUTOMAKER DEFENDANTS

### A.    Honda Defendants

29.    Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Honda Motor manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

30.    Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California. American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, sport utility vehicles, and automobile parts in the United States.

31.    Defendant Honda of America Mfg. Inc. ("Honda Mfg.") is an Ohio corporation with its principal place of business in Marysville, Ohio. Honda Mfg. is a subsidiary of Honda Motor. Honda Mfg. is involved in the design, manufacture, testing, marketing, distribution and sale of Honda vehicles in the United States, including those utilizing the Defective ACUs.

32.    Defendant Honda R&D Co. Ltd. ("Honda R&D") is a Japanese corporation with its principal place of business in Wako, Japan. Honda R&D is a subsidiary of Honda Motor. Honda R&D is involved in the design, development, manufacture, assembly, testing, distribution and sale of Honda vehicles, including those utilizing the Defective ACUs.

33.    Defendants Honda Motor, American Honda, Honda Mfg., and Honda R&D are collectively referred to as "Honda" or the "Honda Defendants." Certain Honda automobiles sold in the United States contain Defective TRW ACUs. The Honda Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

34.     The Honda Defendants engineered, designed, developed, manufactured, or installed the Defective TRW ACUs in certain Honda branded Class Vehicles (defined below), and approved the Defective TRW ACUs for use in those vehicles. They also developed, reviewed, and approved the marketing and advertising campaigns designed to sell those Class Vehicles.

**B.     Hyundai Defendants**

35.     Defendant Hyundai Motor Group ("Hyundai Group") is a foreign for-profit corporation with its principal place of business in Seoul, South Korea. Hyundai Group manufactures automobiles, steel, and automotive parts.

36.     Defendant Hyundai Motor Company ("Hyundai Motor") is a subsidiary of Hyundai Group and is headquartered in Seoul, South Korea. Hyundai Motor manufactures and sells automobiles through independent retail dealers, outlets, and authorized dealerships primarily in North America, South America, Asia, Europe, Africa, and Oceania.

37.     Defendant Hyundai Motor America ("Hyundai America") is a subsidiary of Hyundai Motor headquartered in Fountain Valley, California. Hyundai America conducts the sale, marketing, and operational activities for Hyundai cars, trucks, sport utility vehicles, and automobile parts in the United States. Hyundai America manufactures and assembles its vehicles for sale in the United States in an automobile plant located in Montgomery, Alabama.

38.     "Hyundai" and "Hyundai Defendants" refers to Hyundai Group, Hyundai Motor, and Hyundai America. Hyundai vehicles sold in the United States contain Defective TRW ACUs. The Hyundai Defendants deliver these products into the stream of commerce with the expectation that they will be purchased by consumers in the United States.

39.     The Hyundai Defendants engineered, designed, developed, manufactured, or installed the Defective TRW ACUs in certain Hyundai branded Class Vehicles (defined below), and approved the Defective TRW ACUs for use in

those vehicles. They also developed, reviewed, and approved the marketing and advertising campaigns designed to sell those Class Vehicles.

40.

## III.    PLAINTIFFS

41.    Plaintiff James Bliss resides in Stillwater, Minnesota. Plaintiff Bliss leased a new 2017 Hyundai Sonata in November 2016 for approximately $218 per month from Walser Hyundai in Brooklyn Park, Minnesota. Plaintiff Bliss leased his Class Vehicle primarily for personal, family, and household use. The value of his 2017 Hyundai Sonata has been diminished as a result of the ACU Defect. Plaintiff Bliss would not have leased the 2017 Hyundai Sonata or would not have paid as much for it had he known of the problems or risks associated with the vehicle's ACU Defect.

42.    Plaintiff Thomas H. Price resides in Los Angeles, California.  Plaintiff Price purchased a used 2014 Honda Accord in November 2016 for approximately $20,735 from Honda of Santa Monica in Santa Monica, California. Plaintiff Price purchased his Class Vehicle primarily for personal, family, and household use. The value of his Honda Accord has been diminished as a result of the ACU Defect. Plaintiff Price would not have purchased the Honda Accord or would not have paid as much for it had he known of the problems or risks associated with the vehicle's ACU Defect.

## GENERAL FACTUAL ALLEGATIONS

## I.    Definitions

43.    Plaintiffs bring this action on behalf of themselves, and all persons similarly situated who own or lease Class Vehicles (defined below). Plaintiffs seek redress individually, and on behalf of those similarly situated, for economic losses stemming from Defendants' manufacture, sale or lease, and false representations or omissions concerning the Defective ACUs in the Class Vehicles, including, but not limited to, diminished value. Plaintiffs, on behalf of themselves and those similarly

10

situated, seek to recover damages and statutory penalties and injunctive relief and other equitable relief.

44. "Defective ACUs" refers to all ACUs designed and manufactured by TRW ("TRW ACUs") that contain the ACU Defect, including (a) all ACUs subject to recall or currently under investigation by NHTSA, and (b) all TRW ACUs in Defendants' vehicles subject to any subsequent expansion of pre-existing recalls or new recalls announced prior to the date of an order granting class certification, relating to the tendency of such ACUs to fail and prevent the deployment of airbags and engagement of seatbelt pretensioners.

45. Defective ACUs have an unreasonably dangerous tendency to fail to deploy airbags and engage seatbelt pretensioners.

46. The following table identifies, to the best of Plaintiffs' understanding, and without the benefit of discovery, the vehicles manufactured by Automaker Defendants that contain the ACU Defect ("Class Vehicles"):

| Automaker | Make | Model | Model Years |
|---|---|---|---|
| Hyundai | Hyundai | Sonata | 2013-2019 |
| Hyundai | Hyundai | Sonata Hybrid | 2013-2019 |
| Honda | Acura | RLX | 2014-2019 |
| Honda | Acura | RLX Hybrid | 2014-2019 |
| Honda | Acura | TL | 2012-2014 |
| Honda | Acura | TLX | 2015-2017 |
| Honda | Acura | TSX | 2012-2014 |
| Honda | Acura | TSX Sport Wagon | 2014 |
| Honda | Acura | TSX Sportswagon | 2012-2013 |
| Honda | Honda | Accord | 2013-2015 |
| Honda | Honda | Accord Hybrid | 2014-2015 |
| Honda | Honda | Civic | 2012-2015 |
| Honda | Honda | Civic GX | 2012-2015 |
| Honda | Honda | Civic Hybrid | 2012-2015 |
| Honda | Honda | Civic SI | 2012-2015 |
| Honda | Honda | CR-V | 2012-2016 |
| Honda | Honda | Fit | 2012-2017 |

11

| Automaker | Make | Model | Model Years |
|-----------|------|-------|-------------|
| Honda | Honda | Fit EV | 2013-2014 |
| Honda | Honda | Ridgeline | 2012-2014 |

## II.     TRW ACUs Have a Common, Uniform Defect

47.     This lawsuit concerns the ACU, which contains the ASIC, an electronic component within the ACU that monitors signals from crash sensors. The Automaker Defendants equipped each of the Class Vehicles with an Advanced Airbag System including an ACU. The TRW ACUs are intended to detect when a crash will occur and deploy the airbag to prevent injury to the driver and passengers of the vehicle. A crucial component of this crash detection system is the ASIC, which, when it is functioning properly, will detect the severity of a crash, deploy the airbags if necessary, and engage the seatbelt pretensioners.

48.     The ACU incorporates electrical circuitry, such as diodes, to protect the ASIC from harmful electrical signals that could disrupt or damage its performance. The ASIC in the Class Vehicles' ACUs are susceptible to electrical overstress ("EOS") which allows excess electrical signals produced during the crash to overload the ASIC and prevent the deployment of the airbag and the seat belt pretensioners. A failure of the ASIC prevents deployment of the required airbags and safety devices, or it may otherwise affect the proper operation of the ACU such as by not allowing the ACU to be read with the vehicle's EDR. This failure of the ACU subjects a vehicle's occupant to significant injury and even death.

### A.     Defendants' Knowledge of the Defect

49.     As early as August of 2011, Defendants knew of the problems with the ASIC but chose to cover up these facts. Moreover, despite involvement in investigations and knowledge of the ACU Defect, Defendants have refused to recall vehicles containing the ACU Defect and/or have improperly narrowed the scope of the affected vehicles in order to save costs and avoid negative publicity.

50.    TRW and Hyundai, for example, had knowledge of the ACU Defect at least as early as August 2011, when Hyundai requested that TRW analyze the ACU from a Kia Forte in China involved in an event in which the airbags did not deploy. TRW observed damage on the ASIC that was consistent with EOS.

51.    Instead of investigating the matter further, the Hyundai-Kia Motor Company "communicat[ed] its assessment that the incident was a commanded nondeployment" and considered the matter closed.

52.    Thereafter, Defendants became aware of several other non-deployment incidents. In February 2012, for example, Hyundai was notified of another collision involving a 2011 Hyundai Sonata in which the airbag failed to deploy. In March 2012, TRW communicated with Hyundai regarding its analysis of an ACU from a Kia Forte in Egypt involved in an event in which the airbags did not deploy, wherein TRW observed damage on the ASIC that was consistent with EOS.

53.    TRW communicated with Hyundai in May 2012 "about the investigation of field events observed with EOS." And in June 2012, Hyundai inspected a vehicle involved in a non-deployment incident and found no crash event recorded on the EDR. Hyundai requested TRW's assistance into the investigation. Despite these various incidents, neither TRW nor Hyundai implemented any recalls.

54.    Hyundai received notice of a lawsuit complaint in March 2014, alleging non-deployment of airbags in a 2012 Kia Forte, which was reported to NHTSA through an Early Warning Report. NHTSA subsequently sent Hyundai an inquiry regarding the non-deployment incident, to which Hyundai responded.

55.    Hyundai and TRW continued to investigate other non-deployment incidents. In February 2015, Hyundai requested that TRW review data from an ACU installed in a Hyundai Sonata involved in a crash in which the airbags did not deploy. In May 2015, Hyundai was notified of another collision involving a 2011 Hyundai Sonata where the airbags did not deploy, and TRW downloaded available data from an ACU installed in a Kia Forte whose airbags did not deploy.

56.     TRW advised Hyundai in the summer of 2015 that NHTSA was investigating airbag non-deployment incidents affecting a wide range of vehicle models containing TRW ACUs. In October 2015, Hyundai again inspected a vehicle and found that the vehicle's ACU was non-communicative. Nevertheless, despite Hyundai's and TRW's independent knowledge of the ACU Defect, Hyundai and TRW continued to conceal the defect from the public and failed to issue any recalls.

57.     Based on information filed with the NHTSA, TRW communicated with the Automaker Defendants in January 2016 regarding the EOS effect on the ACU. In February 2016, TRW met with NHTSA, at TRW's request, to discuss its investigation of EOS observed on its ACUs and incidents involving airbag non-deployment. At the same time, TRW advised Hyundai that TRW had provided information regarding all manufacturers with the Defective TRW ACUs to NHTSA.

58.     Between July and November 2016, Hyundai received reports of two other crashes involving 2011 Hyundai Sonata vehicles in which airbag non-deployments occurred.  Hyundai did not inform consumers or issue a recall.

59.     Upon information and belief, in August 2016, TRW disclosed to the Automaker Defendants that Fiat Chrysler had decided to recall certain models containing TRW ACUs. A month later, in September 2016, TRW communicated again with each of the Automaker Defendants about its ongoing investigation of the ACU Defect and its investigation with NHTSA. None of the Automaker Defendants issued a recall or informed the public and its consumers of the defect.

60.     On September 13, 2016, Chrysler filed its first Part 573 Safety Recall Report for vehicles that could experience a loss of airbag and seatbelt pretensioner deployment capability due to damage to the ASU's ASIC. This recall affected approximately 1.5 million Chrysler vehicles. Despite the significant number of recalled vehicles, the Automaker Defendants continued to resist implementing their own recalls or informing the general public of the ACU Defect.

61. Around 2017 another regulatory body became involved in the ACU Defect investigation—Transport Canada. Transport Canada requested information from Hyundai and TRW regarding a non-deployment event incident in a 2013 Kia Forte Koup in Canada following a crash which resulted in the vehicle's destruction. In August 2017, TRW and Hyundai conducted a joint inspection at a TRW facility of the ACU of the 2013 Kia Forte Koup that had been flagged by Transport Canada. The inspection identified internal damage to the ASIC and that no EDR data was recorded.

62. During September through October 2017, Hyundai received and responded to an inquiry from NHTSA regarding the non-deployment of the 2013 Kia Forte Koup incident in Canada. In November 2017, NHTSA's Office of Defects Investigation ("ODI") contacted Hyundai to obtain follow-up information in connection with one of the four vehicles under investigation.

63. In December 2017, faced with the seriousness of the ACU Defect, Hyundai finally engaged a third-party engineering firm to study and analyze the facts and circumstances surrounding the ACU failures. Hyundai, however, never informed the public or issued a recall.

64. It was not until February 21, 2018, that Hyundai and TRW finally conceded that the circumstances associated with the ACU Defect bore similarities to those related to recall campaign 16V-668, where EOS appeared to be a root cause of airbag non-deployment in significant frontal crashes in certain Fiat Chrysler vehicles. TRW asserted that EOS on the ACU could be caused by negative transients originating from certain vehicle components and could be prevented by additional circuit protection installed in ACUs.

65. On February 27, 2018, Hyundai issued a limited safety recall on model year 2011 Hyundai Sonata vehicles, effectively conceding that the TRW ACU Defect manifesting itself in Hyundai vehicles bore enough similarities to the Chrysler recall issued nearly two years earlier. Despite the use of the Defective ACUs in other

non-recalled Hyundai vehicles and despite the number of non-deployment incidents in its other non-recalled vehicles since as early as 2011, Hyundai resisted recalling its Kia Forte or other vehicles. Indeed, the first Hyundai recall was improperly narrow, covering only half a million Hyundai Sonata vehicles.

66.     Hyundai's first recall continued to put TRW and the Automaker Defendants on notice of the TRW ACU Defect. In March 2018, TRW communicated with the other OEMs regarding the ACU Defect and the status of its investigation. Honda and Toyota, however, refused to issue any recalls, despite TRW's communications, prior recalls involving the Defective ACUs, and their own knowledge of non-deployment incidents reported by their customers.

67.     On March 9, 2018, Hyundai tentatively concluded that the root cause of the TRW ACU Defect was likely to involve a component/equipment issue. This conclusion was based on its finding as to the relative susceptibility of the subject ACU to EOS due to the lack of Schottky diodes, a feature included in subsequent ACU versions provided by TRW starting with model year 2013 and later Hyundai Sonata and Sonata Hybrid vehicles.

68.     On March 16, 2018, NHTSA announced its Preliminary Evaluation of certain Hyundai vehicle make and models following reports of air bag non-deployment in frontal crashes (identified as PE18-003). Although initially focused on certain Hyundai vehicles, NHTSA identified TRW as the supplier of the Defective ACUs, thereby putting the other Automaker Defendants on notice that any of their vehicles which contained the same Defective TRW ACUs NHTSA was investigating should be recalled and repaired. At this point, each of the Automaker Defendants certainly knew or should have known that their vehicles with TRW ACUs contained a defect.

69.     On April 18, 2018, Hyundai was finally forced to expand its safety recall scope to include all model year Sonata and Sonata Hybrid vehicles equipped with ACUs that did not contain Schottky diode circuit protection. As of that time,

Hyundai was aware of at least four accidents in the U.S. market and one accident in the Canadian market involving the TRW ACU Defect. EOS was observed inside the ACUs involved in three of these crashes.

70.    In May 2018, TRW continued to communicate with the Automaker Defendants about the ongoing ACU Defect investigation.

71.    On May 28, 2018, Kia finally agreed to recall 2010-2013 Kia Forte and Forte Koup vehicles based on NHTSA's conclusion that the ACUs did not contain adequate circuit protection and created a higher risk of EOS. Based on its engineering analysis of other Kia models equipped with the same TRW ACU as the Forte and Forte Koup, a recall of the 2011-2013 Optima, 2011-2012 Optima Hybrid, and 2011-2012 Sedona was issued on June 1, 2018.

72.    On April 19, 2019, NHTSA upgraded its investigation of the ACU Defect involving TRW ACUs from a Preliminary Evaluation (PE) to an Engineering Analysis (EA), in order to "expand the scope of the investigation to include [TRW], the Tier-one supplier and any manufacturers who installed this unit in production vehicles." NHTSA's upgrade to an Engineering Analysis only further confirmed what the Automaker Defendants knew or should have known as to the severity of the TRW ACU Defect and widespread scope of their affected vehicles.

73.    Notably, NHTSA's Engineering Analysis also disclosed that ODI had recently identified two substantial front crash events involving airbag non-deployments in 2018 and 2019 Toyota Corollas. NHTSA found that, following the collisions, the TRW ACUs could not be read with an EDR, similar to the condition found in other incidents involving non-deployment of airbags in other OEMs' vehicles caused by EOS. NHTSA further concluded EOS was the likely cause of the non-deployments in the Toyota incidents. One of these crash events resulted in a fatality.

74.    As discussed above, the Automaker Defendants had knowledge of the ACU Defect not only by their knowledge of each of the recalls issued by Chrysler

1    and Hyundai and TRW's communications advising them of NHTSA's investigation

2    into the ACU Defect, but also because of several customer complaints involving the

3    ACU Defect in their own vehicles.

4         75.    Honda, for example, was or should have been aware of several customer

5    complaints submitted via NHTSA that should have alerted it to the ACU Defect. In

6    March 2013, a customer complained to NHTSA that in a severe vehicle crash where

7    both the front and the side of the vehicle sustained damage, the airbags in his 2012

8    Acura TSX did not deploy, and his wife died in the crash. The dealership explained

9    to him that the airbags were "ok," but could not explain why they did not deploy.

10        76.    A Honda customer in November 2014 also reported to NHTSA that her

11   husband fell asleep while driving a 2013 Honda Accord, proceeded to hit a tree and a

12   mailbox, and then drove into a ditch head on, completely destroying the vehicle. The

13   airbags did not deploy.

14        77.    Another Honda customer, in April 2015, reported that she was involved

15   in a serious accident with her 2013 Honda Accord where she hit another vehicle, but

16   the airbags did not deploy. Instead, when she opened the door of her vehicle to get

17   out of the car, the airbags deployed, hitting the right side of her face and her neck,

18   shoulder, and breast. The Honda dealer informed her it was an issue with the sensor.

19        78.    In May 2015, a Honda customer reported to NHTSA that she was

20   involved in a head on collision with her 2013 Honda Accord where the airbag light

21   came on, but the airbag did not deploy. She suffered injuries in the crash that

22   required surgery. She was informed that the sensors and seatbelt structure needed to

23   be replaced.

24        79.    In February of 2016, NHTSA received another complaint from a 2015

25   Honda Accord driver who was involved in an accident where the vehicle was

26   deemed a total loss, but the airbags failed to deploy and the driver sustained a head

27   injury.

28

80.     In October of 2016, a Honda dealer informed NHTSA that a Honda customer driving a 2013 Honda Accord hit a deer while driving 45 miles per hour, but the airbags on the driver's side failed to deploy. The vehicle was totaled.

81.     Despite its communications with TRW, its knowledge of the Fiat Chrysler and Hyundai recalls related to the same Defective ACU in its own vehicles, and numerous customer complaints about the ACU Defect, Honda concealed the TRW ACU Defect from its customers, NHTSA, and the public. To date, Honda has refused to issue a recall or admit its vehicles contain the same, uniform TRW ACU Defect.

**III.**    **The Automaker Defendants Sold Their Vehicles As "Safe" and "Reliable"**

82.     At all relevant times, in advertisements and promotional materials, the Automaker Defendants continuously maintained that their vehicles were safe and reliable, while uniformly omitting any reference to the TRW ACU Defect. Plaintiffs, directly or indirectly, viewed or heard such advertisements or promotional materials prior to purchasing or leasing Class Vehicles. The misleading statements and omissions about Class Vehicles' safety in the Automaker Defendants' advertisements and promotional materials were material to decisions to purchase or lease Class Vehicles.

83.     Examples of Honda's safety and reliability representations include the following:

a.      In 2015, Honda represented on its website that "Honda is committed to providing safety for everyone—that means crash protection not only for our own drivers and passengers, but also for the occupants of other vehicles, and injury mitigation for pedestrians." "As a leader, Honda looks beyond government regulations, studying real world situations to develop new safety technologies for everyone."

b.      In 2015, Honda represented on its website: "Acura believes driving a luxury car should be a highly enjoyable experience. And while we tend to

dwell on the more exhilarating aspects of our vehicles, we consider your safety a top priority . . . . Safety has been top of mind with Acura engineers since day one . . . . Over the years, we've added many advanced safety technologies to the list, and the vast majority of them are now standard on every model."

c.    In 2019, Honda represented on Acura's website that "Acura was the first luxury brand awarded top safety ratings across its entire model line. ★★★★★ NHTSA 5-STAR OVERALL VEHICLE SCORE."

d.    In 2019, Honda also represented on Acura's website: "Our unrelenting mission to help keep you safe inspires technologies as innovative as they are effective. Protection is at the heart of Acura design. After all, an Acura can be replaced. Your family cannot."

84.    Examples of Hyundai's safety and reliability representations include the following:

a.    In 2017, Hyundai represented on its website: The Hyundai "SONATA [was] named a 2017 IIHS Top Safety Pick+."

b.    In 2019, Hyundai also represented on its website: "It's always been our aim to engineer the safest cars in the industry[.]"

c.    In 2019, Hyundai also represented on its website that "[y]ou can't overstate the importance of keeping the people you love safe, which is why we can't overstate the importance of always striving to make our safety features more advanced and innovative."

d.    Similarly, in 2019, Hyundai represented on Kia's website that "[a]t Kia, we work tirelessly to ensure that every passive safety system on our vehicles is designed to help you handle the unexpected. And that every active safety system is designed to help you avoid trouble whenever possible."

e.    Hyundai also represented on Kia's website in 2019 that Kia vehicles were: "Built with your safety as our top priority, Kia's vehicle lineup has collected numerous top safety awards."

f. In 2019, Hyundai also represented on Kia's website that its ACU "system monitors the severity of the impact, the presence of a front passenger, and seat-belt use, and then controls airbag inflation accordingly whenever possible."

85. Contrary to these representations and countless others like them, the Automaker Defendants failed to equip the Class Vehicles with ACUs that would meet these standards and failed to disclose to consumers that their vehicles actually contained dangerous and Defective TRW ACUs.

## IV. The Automaker Defendants' Failure to Issue Recalls, Issuance of Late and Inadequate Recalls, and Failure to Assist Impacted Consumers

86. For years Defendants have known about the TRW ACU Defect and concealed the defect from the public, and refused to issue recalls. There are currently about 12.3 million vehicles that have not been recalled and are the subject of an ongoing NHTSA investigation into the TRW ACU Defect.

87. Indeed, of the Automaker Defendants, only Hyundai has issued recalls—much belated recalls, years after investigating the TRW ACU Defect and conferring with TRW and NHTSA on the same. But even Hyundai's two recalls have been woefully inadequate, as they exclude many other Hyundai vehicles with the ACU Defect, which are currently under investigation by NHTSA.

88. Honda to date, has refused to issue any recalls of the TRW ACU Defect, despite the rising number of ACU failures in its own vehicles, the Fiat Chrysler and Hyundai recalls, the NHTSA investigation, and its own communications with TRW about the ACU Defect.

89. Given the large number of affected vehicles, when all the vehicles containing the ACU Defect are ultimately recalled, it will be unlikely that they will be repaired in the near term.

90. As the executive director of the Center for Auto Safety ("CAS") explained, it could not be more apparent that "the auto industry thus far has learned very little from Takata" — the largest automotive recall in U.S. history, resulting in

at least 24 deaths and countless more injuries — in light of the actions, or lack thereof, of Defendants in the face of yet another dangerous vehicle defect that has already claimed at least eight lives. As CAS's director further explained: "While the first fatality reports [relating to the TRW ACU Defect] emerged three years ago, it has taken a higher body count for more significant action to be taken by NHTSA and most impacted manufacturers remain silent. The industry needs to do better," and must be held accountable.

### A.    Failure to Provide Replacement Vehicles

91.    The Class Vehicles are not safe to drive. Due to Defendants' failures, Plaintiffs and Class members are left with poor options — be without use of a vehicle; purchase, lease, or rent a new vehicle until Defendants complete and/or issue and complete a recall; or, use a vehicle with a dangerously Defective TRW ACU over an extended period of time.

92.    As Senators Blumenthal and Markey explained in the Takata recalls related to defective airbags, "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."

93.    Yet, none of the Defendants, except Hyundai for the limited number of vehicles it has recalled, are providing loaner or replacement vehicles to Class members with Defective ACUs.

### TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

94.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the ACU Defect and the misrepresentations and omissions alleged herein. Indeed, upon information and belief, Defendants have known or should have known about the TRW ACU Defect since at least January 2016, when TRW informed the Automaker Defendants of the ACU Defect. Through no fault or lack of diligence, Plaintiffs and Class members were deceived regarding

the Class Vehicles and could not reasonably discover the ACU Defect or Defendants' deception with respect to the defect.

95.     Plaintiffs and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a defect and/or that the Class Vehicles contained an ACU Defect and corresponding safety risk. As alleged herein, the existence of the TRW ACU Defect was material to Plaintiffs and Class members at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence the existence of the TRW ACU Defect, the associated safety risk, or that Defendants were concealing the defect.

96.     Defendants did not fully investigate or disclose the seriousness of the TRW ACU Defect, but instead ignored and concealed the defect from consumers and the public and refused to initiate recalls to remedy the defect or issued belated, insufficient recalls.

97.     At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and Class members the true standard, quality, and grade of the Class Vehicles and to disclose the TRW ACU Defect and corresponding safety risks.

98.     Defendants knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and Class members reasonably relied on Defendants' knowing, active, and affirmative concealment.

99.     For these reasons, any applicable statutes of limitations have been tolled by reason of the discovery rule and Defendants' fraudulent concealment, and Defendants are estopped from relying on any statutes of limitations in defense of this action.

**Estoppel**

100.   Defendants were and are under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Class

23

Vehicles. They actively concealed the true character, quality, and nature of the vehicles; and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the vehicles. Plaintiffs and Class members reasonably relied upon Defendants' knowing and affirmative misrepresentations, and/or active concealment, of these facts. Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

**Discovery Rule**

101.   The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their vehicles had the Defective TRW ACUs.

102.   Plaintiffs and Class members, however, had no realistic ability to discern that their vehicles were defective until after either their airbags failed to deploy or their vehicles were recalled. Even then, Plaintiffs and Class members would have had no reason to discover their causes of action because of Defendants' active concealment of the true nature of the defect, and prior knowledge of it.

## CLASS ACTION ALLEGATIONS

103.   The proposed Class claims all derive directly from a single course of conduct by Defendants. This case is about the responsibility of Defendants, at law and in equity, for their knowledge, conduct, and products. Defendants have engaged in uniform and standardized conduct toward Plaintiffs and Class members. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Additionally, many — and for some claims, all — states share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated as members of the proposed Classes, pursuant to Federal Rules of Civil

Procedure 23(a); and (b)(3), and/or (b)(2), and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

## I. The Consumer Classes

104.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a); and (b)(2), and/or (b)(3), and/or (c)(4); on behalf of the following Classes (collectively referred to as the "Classes"):

> All persons in the United States who purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class");

> All persons or entities who purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased, or own a Class Vehicle (the "California Sub-Class");

> All persons or entities who purchased or leased a Class Vehicle in the State of California (the "Song-Beverly Sub-Class"); and

> All persons or entities who purchased or leased a Class Vehicle in the State of Minnesota and all persons or entities in the State of Minnesota who purchased, leased, or own a Class Vehicle (the "Minnesota Sub-Class").

## II. Numerosity and Ascertainability

105.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). There are millions of Class Vehicles nationwide and thousands, if not more, Class Vehicles

in California and in Minnesota. Individual joinder of all Class members is impracticable.

106. Each of the Classes are ascertainable because their members can be readily identified using registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A), and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

## III.    Predominance of Common Issues

107. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3), because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class members. These include, without limitation, the following:

a.    Whether the Class Vehicles suffer from the TRW ACU Defect;

b.    Whether Defendants knew or should have known about the TRW ACU Defect; and, if so, how long Defendants have known of the defect;

c.    Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.    Whether Defendants omitted and failed to disclose material facts about the Class Vehicles;

e.    Whether Defendants' concealment of the true defective nature of the Class Vehicles induced Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

f.    Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.      Whether Defendants misrepresented that the Class Vehicles were safe;

h.      Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Class Vehicles were designed, manufactured, and sold with the ACU Defect;

i.      Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

j.      Whether Defendants' statements, concealments and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

k.      Whether Defendants violated California and Minnesota statutes; and, if so, what remedies are available under those statutes;

l.      Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

m.      Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and Class members;

n.      Whether the Class Vehicles suffered a diminution of value because of the Defective TRW ACUs;

o.      Whether Defendants have been unjustly enriched by their conduct;

p.      Whether Plaintiffs and Class members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

q.      Whether Plaintiffs and Class members are entitled to a declaratory judgment stating that the ACUs in the Class Vehicles are defective and/or not merchantable;

r.     Whether Defendants should be declared responsible for notifying all Class members of the TRW ACU Defect, and ensuring that all vehicles with the TRW ACU Defect are promptly recalled and repaired;

s.     What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants, and to vindicate statutory and public policy; and

t.     How such penalties should be most equitably distributed among Class members.

## IV.    <u>Typicality</u>

108.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3), because Plaintiffs' claims are typical of the claims of Class members and arise from the same course of conduct by Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

## V.    <u>Adequate Representation</u>

109.   Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

110.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Classes.

## VI.    <u>Superiority</u>

111.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2), because Defendants have acted, and refused to act, on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

112.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding

Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

113.   Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation—by even a small fraction of the Class — would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

114.   The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, potential inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

115.   Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

116.   The Classes expressly disclaim any recovery in this action for physical injury resulting from the TRW ACU Defect without waiving or dismissing such claims. Plaintiffs are informed and believe that injuries suffered in crashes as a result of Defective TRW ACUs implicate the Class Vehicles; constitute evidence supporting various claims, including diminution of value; and are continuing to occur because of Defendants' delays and inaction regarding the commencement and completion of recalls; and because of the installation of Defective TRW ACUs as replacement airbags. The increased risk of injury from the TRW ACU Defect serves as an independent justification for the relief sought by Plaintiffs and Class members.

117.   Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint as though fully set forth in each of the following Claims for Relief asserted on behalf of the Classes.

## CLAIMS FOR RELIEF

**I.      Nationwide Claims**

### COUNT 1

**Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Against the TRW Defendants and the Hyundai Defendants (On behalf of the Nationwide Class)**

118.   Plaintiffs bring this Count on behalf of themselves and the Nationwide Class against TRW Defendants and Hyundai Defendants.

119.   TRW Defendants and Hyundai Defendants are all "persons" under 18 U.S.C. § 1961(3).

120.   TRW Defendants and Hyundai Defendants violated 18 U.S.C. § 1962(c) by participating in or conducting the affairs of the ACU RICO Enterprise (as defined below) through a pattern of racketeering activity.

121. Plaintiffs and Class Members are "person[s] injured in his or her business or property" by reason of TRW Defendants' and Hyundai Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

122. The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the ACU RICO Enterprise:

a. TRW Defendants, who designed, manufactured, and sold millions of Defective ACUs knowing that they contained the ACU Defect, the scope and nature of which they concealed from and misrepresented to the public and regulators for years and still refuse to entirely acknowledge.

b. TRW Defendants' Officers, Executives, and Engineers, who have collaborated and colluded with each other and with other associates in fact in the ACU RICO Enterprise to deceive Plaintiffs and Class Members into purchasing dangerous and defective vehicles, and by actively concealing the ACU Defect and associated safety risks from Plaintiffs and Class Members.

c. Hyundai Defendants, who purchased the Defective ACUs from TRW Defendants, equipped their vehicles with the Defective TRW ACUs, falsely misrepresented that airbag nondeployment was a result of commanded nondeployment rather than the ACU Defect, concealed the ACU Defect from regulators, Plaintiffs, Class Members and the public from August 2011 forward, and falsely and inaccurately represented that their vehicles were safe, thereby deceiving Plaintiffs and Class Members.

123. The ACU RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose. The ACU RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

31

124.   While TRW Defendants and Hyundai Defendants participated in the conduct of the ACU RICO Enterprise, they had an existence separate and distinct from the ACU RICO Enterprise. Further, the ACU RICO Enterprise was separate and distinct from the pattern of racketeering in which TRW Defendants and Hyundai Defendants have engaged.

125.   At all relevant times, TRW Defendants and Hyundai Defendants operated, controlled, or managed the ACU RICO Enterprise, through a variety of actions. TRW Defendants and Hyundai Defendants' participation in the ACU RICO Enterprise was necessary for the successful operation of its scheme to defraud because TRW Defendants manufactured the Defective ACUs, Hyundai Defendants equipped certain of the Class Vehicles with the Defective ACUs, and TRW Defendants and Hyundai Defendants concealed the nature and scope of the ACU Defect, and profited from such concealment.

126.   The members of the ACU RICO Enterprise all served a common purpose: to sell as many ACUs, and vehicles containing such ACUs, as possible, and thereby maximize the revenue and profitability of the ACU RICO Enterprise's members. The members of the ACU RICO Enterprise shared the profits generated by the enterprise, i.e., by sharing the benefit derived from increased sales revenue generated by the scheme to defraud. Each member of the ACU RICO Enterprise benefited from the common purpose: the Hyundai Defendants sold or leased more Class Vehicles, and received more for those vehicles, than they would have otherwise had the scope and nature of the ACU Defect not been concealed; TRW Defendants sold more Defective ACUs to the Hyundai Defendants than they would have otherwise had the scope and nature of the ACU Defect not been concealed; and the Hyundai Defendants sold and serviced more Class Vehicles, and sold or leased those vehicles at a much higher price, as a result of the concealment of the scope and nature of the ACU Defect from Plaintiffs and Class Members.

127.   TRW Defendants and the Hyundai Defendants conducted and participated in the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity that has lasted for several years, beginning no later than 2011 and continuing to this day, and that consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

128.   For TRW Defendants and the Hyundai Defendants, the purpose of the scheme to defraud was to conceal the scope and nature of the TRW ACU Defect found in millions of Defective ACUs in the United States in order to sell more ACUs, sell more Class Vehicles equipped with the defective ACUs, to sell them at a higher price or for a higher profit, and to avoid incurring the expenses associated with repairing the ACU Defect. By concealing the scope and nature of the TRW ACU Defect, TRW Defendants and the Hyundai Defendants also maintained and boosted consumer confidence in their brands and the brands of Automaker Defendants, and avoided remediation costs and negative publicity, all of which furthered the scheme to defraud and helped TRW Defendants and the Hyundai Defendants sell more ACUs and/or Class Vehicles than they would otherwise have sold, and to sell them at a much higher price or for a higher profit.

129.   As detailed herein, TRW Defendants and the Hyundai Defendants were well aware of the risks associated with the Defective TRW ACUs, but intentionally subjected Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits.

130.   To further the scheme to defraud, TRW Defendants and the Hyundai Defendants repeatedly misrepresented and concealed the nature and scope of the ACU Defect. TRW Defendants continued to produce, market, and ship its Defective ACU's, and the Hyundai Defendants continued to equip certain Class Vehicles with the defective ACUs, when in fact TRW Defendants and the Hyundai Defendants

33

knew that the ACUs were subject to a fundamental, uniform defect that rendered the airbag systems unsuitable to perform their sole purpose of protecting automobile occupants in collisions.

131.   To further the scheme to defraud, TRW Defendants and the Hyundai Defendants misrepresented and concealed the nature and scope of the ACU Defect. TRW Defendants also permitted or caused the Automaker Defendants to promote the safety, reliability, and quality of the ACUs and airbag systems contained in Class Vehicles while simultaneously concealing the nature and scope of the TRW ACU Defect.

132.   To carry out, or attempt to carry out, the scheme to defraud, TRW Defendants and the Hyundai Defendants have conducted or participated in the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

133.   TRW Defendants and the Hyundai Defendants' pattern of racketeering activity in violation of the mail and wire fraud statutes included, but was not limited to, the following:

a.   From August 2011 through the present, TRW Defendants transmitted or caused to be transmitted, by means of mail travelling in interstate or foreign commerce, shipments of ACUs for installation in the Class Vehicles based on the false pretense and misrepresentation that those ACUs were fit for their sole purpose, in furtherance of TRW Defendants' scheme to defraud, and received payments from the Automaker Defendants for those shipments. During this same time, the Hyundai Defendants transmitted or caused to be transmitted, by means of mail travelling in interstate or foreign commerce, shipments of Class Vehicles and payments for defective ACUs. These regular, repeated shipments of defective ACUs

and Class Vehicles and payments therefore facilitated and furthered the scheme to defraud.

b.     From August 2011 through the present, TRW Defendants utilized interstate and international mail and wires for the purpose of obtaining money from the Automaker Defendants, including the Hyundai Defendants, in exchange for their ACUs, by means of the false pretenses and misrepresentations herein described.

c.     As early as August 2011, the TRW Defendants and the Hyundai Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications regarding airbag non-deployment and ASIC damage consistent with EOS. Hyundai unilaterally announced its determination that the failure was a "commanded nondeployment," furthering the scheme to defraud and conceal the ACU Defect.

d.     In March 2012, TRW Defendants and the Hyundai Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications regarding ACIS failure in a 2011 Kia Forte in Egypt where airbags did not deploy. TRW Defendants, upon analysis, determined that there was ASIC damage consistent with EOS. Hyundai unilaterally announced its determination that the failure was a "commanded nondeployment," furthering the scheme to defraud and conceal the ACU Defect

e.     In May 2012, TRW Defendants and the Hyundai Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, fraudulent or misleading communications regarding ASIC damage consistent with EOS in Hyundai Sonatas and Kia Fortes that were failing to deploy during accidents. Hyundai unilaterally announced its determination that the failures were a "commanded nondeployment," furthering the scheme to defraud and conceal the ACU Defect.

f.     In 2015, TRW Defendants and the Hyundai Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in

interstate or foreign commerce, fraudulent or misleading communications regarding field events (accidents) with observed EOS damage.

g.      In January 2016, TRW Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications with the Automaker Defendants regarding EOS and contact with NHTSA.

h.      On September 23, 2016, TRW Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications with Automaker Defendants regarding their supply of ACUs and their ASIC research. In November 2017, the Hyundai Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, communications with NHTSA, which misrepresented and concealed the true nature and scope of the ACU Defect.

i.      Between January and February 2018, TRW Defendants, transmitted or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, fraudulent communications with NHTSA discussing the ACU Defect. TRW Defendants concealed from NHTSA the true nature and extent of the ACU Defect.

j.      In April 2018, TRW Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, false and misleading communications to NHTSA regarding their supply of ACUs and their ASIC research.

k.      From at least 2014 through 2018, the Hyundai Defendants transmitted, or caused to be transmitted, by means of mail and wires travelling in interstate or foreign commerce, false and misleading communications to NHTSA regarding nondeployment of airbags in Hyundai and Kia vehicles as a result of the ACU Defect and concealed the true scope and nature of the ACU Defect from NHTSA, Plaintiffs and Class Members and the public.

134.   TRW Defendants' and the Hyundai Defendants' conduct in furtherance of this scheme was intentional. Plaintiffs and Class Members were directly harmed as a result of TRW Defendants' and the Hyundai Defendants' intentional conduct. Plaintiffs, Class Members, and federal regulators, among others, relied on TRW Defendants' and the Hyundai Defendants' material misrepresentations and omissions.

135.   As described herein, TRW Defendants and the Hyundai Defendants' engaged in a pattern of related and continuous predicate acts for years. The predicate acts were each conducted with the common purpose of defrauding Plaintiffs and other Class Members and obtaining significant monies and revenues from them while providing defective ACUs for installation in the Class Vehicles, and or sealing and leasing certain Class Vehicles equipped with defective ACUs, rendering those vehicles worth significantly less than the purchase price paid. The predicate acts were related, having the same or similar results, victims, participants, and methods of commission.

136.   The predicate acts all had the purpose of generating significant revenue and profits for TRW Defendants and the Hyundai Defendants at the expense of Plaintiffs and Class Members. The predicate acts were committed or caused to be committed by TRW Defendants and the Hyundai Defendants through their participation in the ACU RICO Enterprise, and in furtherance of their fraudulent scheme to obtain Plaintiffs' and Class Members' funds and to avoid the expense of remediating the ACU Defect.

137.   By reason of and as a result of the conduct of the TRW Defendants and the Hyundai Defendants, and in particular, the above-described pattern of racketeering activity, Plaintiffs and Class Members have been injured in their business and/or property in multiple ways, including but not limited to:

    a.   overpayment for leased or purchased Class Vehicles, in that Plaintiffs believed they were paying for a vehicle with safe airbag systems and

obtained a vehicle with the TRW ACU Defect, and was deprived of the benefit of their bargain; and

   b. the value of the Class Vehicles has diminished, thus reducing their resale value.

138. TRW Defendants' and the Hyundai Defendants' violations of 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive and other equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

**COUNT 2**

**Violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Against the TRW Defendants and Hyundai Defendants (On behalf of the Nationwide Class)**

139. Plaintiffs bring this Count on behalf of themselves and the Nationwide Class.

140. At all relevant times TRW Defendants and the Hyundai Defendants were associated with the ACU RICO Enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in, directly and indirectly, the conduct of the affairs of the ACU RICO Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

141. Over the course of the past decade, Hyundai Defendants and TRW Defendants shared information about ACU and airbag failures, jointly and secretly investigated the possible causes of those failures, delayed and/or prevented the release of inculpatory information, misled regulatory authorities, and maintained a consistent public posture as to the scope of vehicles affected by the Defective TRW ACUs and the safety risks that those ACUs posed. Hyundai Defendants' and TRW

Defendants' close cooperation on issues surrounding the TRW ACU Defect and joint participation in predicate acts described below is evidence of the conspiracy.

142. The TRW Defendants and Hyundai Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof.

143. More specifically, the following conduct and overt acts demonstrate the ongoing conspiracy between Hyundai Defendants and TRW Defendants:

144. In August 2011, after a Kia Forte in China was involved in an accident where the airbags failed to deploy, Hyundai Defendants and TRW Defendants investigated the cause of the deployment failure. Although the ACU showed signs of EOS, Hyundai Defendants and TRW Defendants agreed to fraudulently deem the failure "commanded nondeployment" in future wire and mail communications, concealing the true nature of the airbag failure in furtherance of the conspiracy.

145. On multiple occasions in 2015 and 2016, TRW Defendants and Hyundai Defendants discussed several Hyundai vehicles that were involved in accidents where the airbags failed to deploy. In light of prior knowledge and the ACU test results in these accidents, TRW Defendants and Hyundai Defendants agreed or conspired to conceal from the market a pattern of ACU failures in which a vehicle showed signs of EOS, in furtherance of the conspiracy to portray Hyundai vehicles as safe in order to sell more vehicles.

146. Between August 2011 and February 27, 2018, TRW Defendants and Hyundai Defendants agreed or conspired to withhold critical information from both the public and regulatory authorities in furtherance of the conspiracy. Instead of recalling the dangerous and defective vehicles or alerting the regulatory authorities, TRW Defendants and Hyundai Defendants agreed and conspired to conceal the nature and prevalence of the TRW ACU Defect by multiple means, including by way of fraudulent use of the mail or wires.

147.   TRW Defendants and Hyundai Defendants agreed to and did conduct and participate in the conduct of the ACU RICO Enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs and Class members, as more fully described in the prior Count.

148.   By reason of and as a result of the conduct of the TRW Defendants, and in particular, the above-described pattern of racketeering activity, Plaintiffs and Class Members have been injured in their business and/or property in multiple ways, including but not limited to: overpayment for leased or purchased Class Vehicles, in that Plaintiffs believed they were paying for vehicles with safe airbag systems and obtained vehicles with the ACU Defect, and were deprived of the benefit of their bargain; and the value of the Class Vehicles has diminished, thus reducing their resale value.

149.   Had TRW Defendants and/or Hyundai Defendants been entirely forthcoming with NHTSA and with the public in a timely manner about the vast scope of the ACU Defect and the grave risks it posed to countless vehicle occupants, as was their duty, Plaintiffs and Class Members would not have suffered these harms.

150.   TRW Defendants' and the Hyundai Defendants' conspiracy to commit mail fraud and/or wire fraud was reasonably calculated to deceive persons of ordinary prudence and comprehension, and was committed with reckless indifference to the truth if not the outright intent to deceive.

151.   The Hyundai Defendants' and TRW Defendants' conspiracy to violate 18 U.S.C. § 1962(c) was committed with the specific intent to defraud, thereby entitling Plaintiffs and Class Members to treble damages under 18 U.S.C. § 1964(c).

152.   The Hyundai Defendants' and TRW Defendants' violations of 18 U.S.C. § 1962(d) have directly and proximately caused injuries and damages to Plaintiffs and Class Members, and Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief

and costs and reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(a) and 1964(c).

## COUNT 3

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, Against the Automaker Defendants (On behalf of the Nationwide Class)

153.   Plaintiffs bring this Count against the Automaker Defendants on behalf of members of the Nationwide Class.

154.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a)-(d).

155.   The Class Vehicles are "consumer products" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(1).

156.   Plaintiffs are the "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs are the consumer because they are the persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

157.   The Automaker Defendants are each a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

158.   Section 2310(d)(1) of the Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

159.   The Automaker Defendants provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, the Automaker Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would

pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

160.   The Automaker Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class, pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they are equipped with Defective ACUs.

161.   Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim or otherwise limit liability for the Class Vehicles is null and void.

162.   Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between the Automaker Defendants, on the one hand, and Plaintiffs and the other Class members, on the other.

163.   Any limitations on the warranties are substantively unconscionable. The Automaker Defendants knew that the Class Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. The Automaker Defendants failed to disclose the ACU Defect to Plaintiffs and the other Class members. Thus, the Automaker Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

164.   Plaintiffs and each of the other Class members have had sufficient direct dealings with either the Automaker Defendants or their agents (dealerships) to establish privity of contract.

165.   Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between the Automaker Defendants and their dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit

consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect.

166.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Automaker Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

167.   Furthermore, affording the Automaker Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of the sale or lease of each Class Vehicle, the Automaker Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford the Automaker Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

168.   Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because the Automaker Defendants are refusing to acknowledge any revocation of acceptance, and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

169.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their

vehicles in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorney's fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

170. Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have or will incur in attempting to rectify the ACU Defect in his vehicle. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in getting their Class Vehicles repaired and/or going through the recall process.

171. The right of Class members to recover these expenses as an equitable matter to put them in the place they would have been but for the Automaker Defendants' conduct presents common questions of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by the Automaker Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

### COUNT 4

### Fraudulent Concealment, Against the TRW Defendants (On behalf of the Nationwide Class)

172. Plaintiffs bring this claim against TRW on behalf of themselves and the members of the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts (case-dispositive differences) among various states' laws of fraudulent concealment. In the alternative, Plaintiffs bring this claim under Minnesota law on behalf of the Minnesota Sub-Class

173.   As described above, TRW made material omissions and/or affirmative misrepresentations regarding the Defective ACUs contained in the Class Vehicles.

174.   TRW concealed and suppressed material facts regarding the Defective ACUs— most importantly, the ACU Defect, which causes, among other things, the Defective ACUs to fail during a crash event resulting in the non-deployment of airbags and seat belts, thereby failing to protect drivers and passengers in a collision.

175.   TRW still has not made full and adequate disclosure, continues to defraud Plaintiffs and the Class members, and continues to conceal material information regarding the ACU Defect from Plaintiffs and Class members.

176.   TRW had a duty to disclose the ACU Defect because it:

      a.   Had exclusive and/or far superior knowledge and access to the facts, and knew the facts were not known to or reasonably discoverable by Plaintiffs and Class members;

      b.   Intentionally concealed the foregoing from Plaintiffs and Class Members; and

      c.   Made incomplete representations about the safety and reliability of the Defective ACUs and/or Class Vehicles, while purposefully withholding material facts from Plaintiffs and Class members that contradicted these representations.

177.   These omitted and concealed facts were material because they would be relied upon by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products are safe and reliable and whether that manufacturer stands behind its products are material concerns to a consumer.

178.   TRW concealed and suppressed these material facts to falsely assure purchasers and consumers that the Defective ACUs and Class Vehicles were capable of performing safely.

179.   TRW also misrepresented the safety and reliability of the Defective ACUs and/or Class Vehicles, because it either (a) knew but did not disclose the ACU Defect; (b) knew that it did not know whether its safety and reliability representations were true or false; or (c) should have known that its misrepresentations were false.

180.   TRW actively concealed or suppressed these material facts, in whole or in part, to maintain a market for its ACU units, to protect its profits, and to avoid recalls that would hurt the brand's image and cost TRW money. It did so at the expense of Plaintiffs and Class members.

181.   Plaintiffs and Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts.

182.   Had they been aware of the Defective ACUs installed in the Class Vehicles, and TRW's disregard for safety, Plaintiffs and Class members either would have paid less for their Class Vehicles, or they would not have purchased or leased them at all. Plaintiffs and Class members did not receive the benefit of their bargain as a result of TRW's fraudulent concealment.

183.   Because of the concealment or suppression and/or misrepresentation of the facts, Plaintiffs and Class members sustained damage because they own vehicles that diminished in value as a result of TRW's concealment of, and failure to timely disclose, the serious TRW ACU Defect in millions of Class Vehicles and the serious safety and quality issues caused by TRW's conduct.

184.   The value of all Class members' vehicles has diminished as a result of TRW's fraudulent concealment of the ACU Defect and has made any reasonable consumer reluctant to purchase any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

185.   Accordingly, TRW is liable to Plaintiffs and Class members for their damages in an amount to be proven at trial, including, but not limited to, their lost

benefit of the bargain or overpayment for the Class Vehicles at the time of purchase, the diminished value of the Defective TRW ACUs and the Class Vehicles, and/or the costs incurred in storing, maintaining or otherwise disposing of the Defective TRW ACUs.

186.    TRW's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members's rights and well-being, and with the aim of enriching TRW. TRW's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and affecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 5

### Fraudulent Concealment, Against the Automaker Defendants
### (On behalf of the Nationwide Class)

187.    Plaintiffs bring this claim against the Automaker Defendants on behalf of themselves and the members of the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts (case-dispositive differences) among various states' laws of fraudulent concealment. In the alternative, Plaintiffs bring this claim under the laws of the states where Plaintiffs and Class Members reside and/or purchased or leased their Class Vehicles.

188.    As described above, the Automaker Defendants knowingly made material omissions and affirmative misrepresentations regarding the Class Vehicles and the Defective ACUs contained therein.

189.    The Automaker Defendants concealed and suppressed material facts regarding the Defective ACUs— most importantly, the ACU Defect, which causes, among other things, the Defective ACUs to fail during a crash event resulting in the non-deployment of airbags and seat belt pretensioners, thereby failing to protect drivers and passengers in collisions.

190.    At least since March 2013 when a customer submitted a complaint to NHTSA that the airbags did not deploy in a 2012 Acura TSX that was in an accident, and likely since an earlier date to be determined at trial, and certainly following additional such incidents with its vehicles, Honda knew or should have known of the ACU Defect. Likewise, Hyundai had knowledge of the ACU Defect at least as early as August 2011 when it requested that TRW analyze the ACU from a Kia Forte that was involved in an event in which the airbags did not deploy.

191.    Notwithstanding all of this, the Automaker Defendants still have not made full and adequate disclosure, continue to defraud Plaintiffs and the Class, and continue to conceal material information regarding the ACU Defect, in efforts to avoid a costly recall.

192.    The Automaker Defendants had a duty to disclose the ACU Defect because they:

a.    Had exclusive and/or far superior knowledge and access to the facts, and knew the facts were not known to or reasonably discoverable by Plaintiffs and Class members;

b.    Intentionally concealed the foregoing from Plaintiffs and Class Members; and

c.    Made incomplete representations about the safety and reliability of the Defective ACUs and Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

193.    These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products are safe and reliable and whether that manufacturer stands behind its products, are material concerns to a consumer. Plaintiffs and Class Members trusted the Automaker Defendants not to sell or lease vehicles that were defective or that

48

violated federal law governing motor vehicle safety and to uphold its recall obligations under governing laws.

194. The Automaker Defendants concealed and suppressed these material facts to falsely assure purchasers and consumers that the Defective ACUs and Class Vehicles were capable of performing safely, as represented by the Automaker Defendants and reasonably expected by consumers.

195. The Automaker Defendants also misrepresented the safety and reliability of the Defective ACUs and Class Vehicles, because they either (a) knew but did not disclose the ACU Defect; (b) knew that it did not know whether its safety and reliability representations were true or false; or (c) should have known that its misrepresentations were false.

196. The Automaker Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect their profits, and to avoid recalls that would hurt their brand's image and cost them money. They did so at the expense of Plaintiffs and Class members.

197. Plaintiffs and Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed or suppressed facts.

198. Had they been aware of the Defective ACUs installed in the Class Vehicles, and the Automaker Defendants' callous disregard for safety, Plaintiffs and Class members either would have paid less for their Class Vehicles or they would not have purchased or leased them at all. Plaintiffs and Class members did not receive the benefit of their bargain as a result of the Automaker Defendants' fraudulent concealment.

199. Because of the concealment or suppression and/or misrepresentation of the facts, Plaintiffs and Class members sustained damage because they own vehicles that diminished in value as a result of the Automaker Defendants' concealment of, and failure to timely disclose, the serious ACU Defect in millions of Class Vehicles

and the serious safety and quality issues caused by the Automaker Defendants'
conduct.

200.  The Automaker Defendants' fraudulent concealment of the ACU Defect
caused Class members to purchase or lease Class Vehicles at prices well in excess of
their value and made any prospective resale purchasers of Class members' Class
Vehicles reluctant to purchase those vehicles, let alone pay what otherwise would
have been fair market value for the vehicles.

201.  Accordingly, the Automaker Defendants are liable to Plaintiffs and
Class members for their damages in an amount to be proven at trial, including, but
not limited to, their lost benefit of the bargain or overpayment for the Class Vehicles
at the time of purchase, the diminished value of the Defective TRW  ACUs and the
Class Vehicles, and/or the costs incurred in storing, maintaining, or otherwise
disposing of the Defective ACUs.

202.  The Automaker Defendants' acts were done maliciously, oppressively,
deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class
members' rights and well-being, and with the aim of enriching the Hyundai
Defendants. The Automaker Defendants' conduct, which exhibits the highest degree
of reprehensibility, being intentional, continuous, placing others at risk of death and
injury, and affecting public safety, warrants an assessment of punitive damages in an
amount sufficient to deter such conduct in the future, which amount is to be
determined according to proof.

## COUNT 6

### Unjust Enrichment, Against the Automaker Defendants (On
### behalf of the Nationwide Class)

203.  Plaintiffs bring this claim against the Automaker Defendants on behalf
of themselves and the members of the Nationwide Class under the common law of
unjust enrichment, as there are no true conflicts (case-dispositive differences) among
various states' laws of unjust enrichment. In the alternative, Plaintiffs bring this

1  claim under the laws of the states where Plaintiffs and Class Members reside and/or

2  purchased or leased their Class Vehicles.

3      204.   The Automaker Defendants have received and retained a benefit from

4  Plaintiffs and Class members and inequity has resulted.

5      205.   The Automaker Defendants benefitted through their unjust conduct, by

6  selling or leasing Class Vehicles with a concealed safety-and-reliability related

7  defect, at a profit, for more than these Class Vehicles were worth, to Plaintiffs and

8  Class members, who overpaid for these Class Vehicles, and/or would not have

9  purchased these Class Vehicles at all; and who have been forced to pay other costs.

10     206.   It is inequitable for the Automaker Defendants to retain these benefits.

11     207.   Plaintiffs and Class members do not have an adequate remedy at law.

12     208.   As a result of the Automaker Defendants' conduct, the amount of its

13  unjust enrichment should be disgorged, in an amount to be proven at trial.

14  **II.**     **California Sub-Class Claims Against Honda Defendants**

15                                **COUNT 7**

16      **Violation of the Song-Beverly Consumer Warranty Act for**

17     **Breach of the Implied Warranty of Merchantability, Cal. Civ. Code**

18               **§§ 1791.1 and 1792, against Honda Defendants**

19                  **(On behalf of Song-Beverly Sub-Class)**

20     209.   Plaintiff Price brings this count on behalf of himself and the members of

21  the Song-Beverly Sub-Class against the Honda Defendants.

22     210.   Plaintiff Price and members of the Song-Beverly Sub-Class are

23  "buyers" within the meaning of Cal. Civ. Code § 1791(b).

24     211.   The Class Vehicles and/or the ACUs installed in them are "consumer

25  goods" within the meaning of Cal. Civ. Code § 1791(a).

26     212.   The Honda Defendants are all considered a "manufacturer" within the

27  meaning of Cal. Civ. Code § 1791(j).

28

213.  The Honda Defendants impliedly warranted to Plaintiff Price and members of the Song-Beverly Sub-Class that the Class Vehicles and/or the defective ACUs installed in them were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, they do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

214. Cal. Civ. Code § 1791.1(a) states: "[i]mplied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: 1) Pass without objection in the trade under the contract description; 2) Are fit for the ordinary purposes for which such goods are used; 3) Are adequately contained, packaged, and labeled; and 4) Conform to the promises or affirmations of fact made on the container or label.

215.  The Class Vehicles and/or the defective ACUs installed in them would not pass without objection in the automotive trade because defective airbag systems containing the ACU Defect can fail to deploy during an accident.

216.  Because of the ACU Defect, the Class Vehicles are not safe to drive and thus not fit for ordinary purposes.

217.  The Class Vehicles and/or the defective ACUs installed in them are not adequately labeled because the labeling fails to disclose the ACU Defect in them. The Honda Defendants failed to warn about the dangerous ACU Defect in the Class Vehicles.

218.  The Honda Defendants breached the implied warranty of merchantability by manufacturing and selling the Class Vehicles and/or the defective ACUs installed in them which cause airbags to fail to deploy during an accident. These defective airbag systems have deprived Plaintiff Price and members of the Song- Beverly Sub-Class of the benefit of their bargain, and has caused the Class Vehicles to depreciate in value.

219.  The Honda Defendants were provided notice of these issues by their knowledge of the issues, by numerous lawsuits and complaints filed against them and/or others, and by internal and NHTSA investigations, inter alia.

220.  As a direct and proximate result of The Honda Defendants' breach of their duties under California Law, Plaintiff Price and members of the Song-Beverly Sub-Class received goods whose dangerous condition substantially impairs their value. Plaintiff Price and members of the Song-Beverly Sub-Class have been damaged by the diminished value, malfunctioning, and non-use of their Class Vehicles.

221.  Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff Price and members of the Song-Beverly Sub-Class are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

222.  Pursuant to Cal. Civ. Code § 1794, Plaintiff Price and members of the Song-Beverly Sub-Class are entitled to costs and attorneys' fees.

**COUNT 8**

**California Breach of Express Warranty, Cal. Com. Code §§ 2313 and 10210, Against the Honda Defendants**

**(On behalf of the California Sub-Class)**

223.  Plaintiff Price brings this count on behalf of himself and the members of the California Sub-Class against the Honda Defendants.

224.  The Honda Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of the Class Vehicles under § 2103(1)(d).

225.  With respect to leases, the Honda Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

226.  The Class Vehicles and the ACUs are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

227. In connection with the purchase or lease of each one of its new vehicles, the Honda Defendants provide express warranties. Honda provides a New Vehicle Limited Warranty for a period of three years or 36,000 miles, whichever occurs first and covers any repair or replacement of any part that is defective in material or workmanship under normal use.

228. The Honda Defendants' warranties formed a basis of the bargain that was breached when Plaintiff Price and members of the California Sub-Class purchased or leased their Class Vehicles.

229. The ACU Defect in the defective airbag systems existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff Price and members of the California Sub-Class had no knowledge of the existence of the defect, which was known and concealed by the Honda Defendants. Despite the applicable warranties, the Honda Defendants failed to inform Plaintiff Price and members of the California Sub-Class that the Class Vehicles contained the ACU Defect during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the defective airbag systems to Plaintiff Price and members of the California Sub-Class.

230. Because of the ACU Defect, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

231. Plaintiff Price and members of the California Sub-Class could not have reasonably discovered the ACU Defect.

232. The Honda Defendants breached their express warranties promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

233. Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture after a point in time when the Honda Defendants knew the defective

airbag systems contained the ACU Defect and had an associated safety risk. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacturing defects which cause airbags and safety restraints not to perform as warranted.

234.   Specifically, on information and belief, the Honda Defendants breached their express warranties by: (1) knowingly providing Plaintiff Price and members of the California Sub-Class with Class Vehicles containing defects in material that were never disclosed to Plaintiff Price and members of the California Sub-Class, (2) failing to repair or replace the defective Class Vehicles at no cost within the warranty period, (3) ignoring, delaying responses to, and denying warranty claims in bad faith, and/or (4) supplying products and materials that failed to conform to the representations made by the Honda Defendants.

235.   Plaintiff Price and members of the California Sub-Class have given Defendants a reasonable opportunity to cure their breach of express warranties or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile given that the repairs or replacements offered by the Honda Defendants can neither cure the defect in the Class Vehicles nor resolve the incidental and consequential damages flowing therefrom.

236.   Thus, the Honda Defendants' written warranties fail of their essential purpose and the recovery of Plaintiff Price and members of the California Sub-Class are not limited to their remedies under those written warranties.

237.   The Honda Defendants were provided notice of the defect in the defective airbag systems by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording the Honda Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because the Honda Defendants have known of and concealed the defective airbag systems and, on information and belief,

have not offered to repair or replace the defective airbag systems for Plaintiff Price and members of the California Sub-Class free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles, and within the applicable warranty periods.

238.    Any attempt by the Honda Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, the Honda Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in the Honda Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Price and members of the California Sub-Class. Among other things, Plaintiff Price and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored the Honda Defendants. A gross disparity in bargaining power existed between the Honda Defendants and members of the California Sub-Class, and the Honda Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the defective airbag systems would fail to deploy during an accident.

239.    Further, the limited warranties promising to repair and/or correct a manufacturing defect fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff Price and members of the California Sub-Class whole because, on information and belief, the Honda Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

240.    The Honda Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff Price and members of the California Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

241.  Plaintiff Price and members of the California Sub-Class are excused by law from performance of any warranty obligations as a result of the Honda Defendants' conduct described herein.

242.  As a direct and proximate result of the Honda Defendants' breach of express warranties, Plaintiff Price and members of the California Sub-Class have been damaged in an amount to be determined at trial.

243.  Finally, because of the Honda Defendants' breach of express warranties as set forth herein Plaintiff Price and members of the California Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Price and members of the California Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT 9

**Violation of the Consumers Legal Remedies Act ("CLRA"),**

**Cal. Civ. Code § 1750, *et seq.* against the Honda Defendants**

**(On behalf of the California Sub-Class)**

244.  Plaintiff Price brings this count on behalf of himself and the members of the California Sub-Class against all the Honda Defendants.

245.  The Class Vehicles and ACUs are "goods" as defined in Cal. Civ. Code § 1761(a).

246.  Plaintiff Price, the California Sub-Class, and the Honda Defendants are "persons" as defined in Cal. Civ. Code § 1761(c).

247.  Plaintiff Price and the California Sub-Class are "consumers" as defined in Cal. Civ. Code § 1761(d).

248.  California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

249.   Each of the remaining allegations of wrongful conduct in this Count are hereby expressly limited to conduct engaged in *after* Honda became aware of the defective ACUs in its Class Vehicles.

250.   The Honda Defendants have engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code § 1750, *et seq.*, as described above and below, by among other things, representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not.

251.   In the course of their business, the Honda Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.

252.   The Honda Defendants also engaged in unlawful trade practices by representing that the Class Vehicles and/or the defective airbag systems installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and omitting material facts in describing them. The Honda Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.

253.   The Honda Defendants have known of the ACU Defect in its defective airbag systems and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them.

254.   By failing to disclose and by actively concealing the ACU Defect in the Class Vehicles and/or the defective airbag systems installed in them, by marketing

them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, the Honda Defendants engaged in unfair or deceptive business practices in violation of the CLRA. The Honda Defendants deliberately withheld the information about the propensity of the defective airbag systems to fail to deploy during an accident, in order to ensure that consumers would purchase the Class Vehicles.

255. The Honda Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Price and members of the California Sub-Class.

256. The Honda Defendants knew or should have known that their conduct violated the CLRA.

257. As alleged above, the Honda Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them that were either false or misleading.

258. To protect their profits and to avoid remediation costs and a public relations nightmare, the Honda Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them and their tragic consequences, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

259. The Honda Defendants owed Plaintiff Price and members of the California Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them because the Honda Defendants:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.      Intentionally concealed the foregoing from Plaintiff Price and members of the California Sub-Class; and/or

c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff Price and members of the California Sub-Class that contradicted these representations.

260.   The Class Vehicles and/or the defective airbag systems installed in them posed and/or pose an unreasonable risk of death or serious bodily injury to Plaintiff Price and members of the California Sub-Class, passengers, other motorists, pedestrians, and the public at large, because the defective airbag systems are inherently defective and dangerous in that the defective airbag systems fail to deploy during accidents.

261.   The Honda Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiff Price and members of the California Sub-Class, about the true safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them. The Honda Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective airbag systems installed in them with an intent to mislead Plaintiff Price and members of the California Sub-Class.

262.   The Honda Defendants' failure to disclose, and active concealment of, the dangers and risks posed by the defective airbag systems in Class Vehicles were material to Plaintiff Price and members of the California Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

263.   The Honda Defendants' violations present a continuing risk to Plaintiff Price and members of the California Sub-Class, as well as to the general public. The

Honda Defendants' unlawful acts and practices complained of herein affect the public interest, and trade and commerce in the State of California.

264. The Honda Defendant's violations of the CLRA were willful and oppressive.

265. Plaintiff Price and members of the California Sub-Class, demand judgment against the Honda Defendants under the CLRA for an injunction requiring the Honda Defendants to adequately and permanently repair the Class Vehicles and/or the defective airbag systems installed in them, or provide a suitable alternative, free of charge, and an award of attorneys' fees pursuant to Civil Code § 1780(d). Plaintiff Price and members of the California Sub-Class seek this injunctive relief for the Honda Defendants' myriad violations of the CLRA, including Cal. Civ. Code §§ 1770(a)(5), (7), and (9).

266. In accordance with section 1782(a) of the CLRA, Plaintiff Price's counsel, on behalf of Plaintiff Price and members of the California Sub-Class, will serve the Honda Defendants with notice of their alleged violations of California Civil Code § 1770(a) relating to the Class Vehicles and/or the defective airbag systems installed in them purchased by Plaintiff Price and members of the California Sub-Class, and demand that the Honda Defendants correct or agree to correct the actions described therein. If the Honda Defendants fail to do so, Plaintiff Price and members of the California Sub-Class will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiff Price and members of the California Sub-Class are entitled.

### COUNT 10

**Violation of Unfair Competition Law (the "UCL"), Cal. Bus.**

**& Prof. Code § 17200 *et seq.* , Against the Honda Defendants**

**(On behalf of the California Sub-Class)**

267. Plaintiff Price brings this count on behalf of himself and the members of the California Sub-Class against the Honda Defendants.

268.   Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." The Honda Defendants engaged in conduct that violated all three prongs of this statute.

269.   The Honda Defendants committed an unlawful business act or practice in violation of § 17200 by their violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as set forth above, by the acts and practices set forth in this Complaint.

270.   The Honda Defendants committed unfair business acts and practices in violation of § 17200 when, after learning of the ACU Defect in their Class Vehicles, they concealed the existence and nature of the ACU Defect, dangers, and risks posed by the Class Vehicles and/or the defective airbag systems installed in them. The Honda Defendants represented that the Class Vehicles and/or the defective airbag systems installed in them were reliable and safe when, in fact, they are not.

271.   The Honda Defendants violated the fraudulent prong of § 17200 because the misrepresentations and omissions regarding the safety and reliability of the Class Vehicles and/or the defective airbag systems installed in them as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

272.   The Honda Defendants committed fraudulent business acts and practices in violation of § 17200 when they concealed the existence and nature of the ACU Defect, dangers, and risks posed by the Class Vehicles and/or the defective airbag systems installed in them, while representing in their marketing, advertising, and other broadly disseminated representations that the Class Vehicles and/or the defective airbag systems installed in them were reliable and safe when, in fact, they are not. The Honda Defendants' active concealment of the dangers and risks posed by the Class Vehicles and/or the defective airbag systems installed in them are likely to mislead the public with regard to their true defective nature.

273.   The Honda Defendants have violated the unfair prong of § 17200 because of the acts and practices set forth in the Complaint, including the manufacture and sale of Class Vehicles with the defective airbag systems installed in them, and the Honda Defendants' failure to adequately investigate, disclose and remedy those defects.  This conduct offends established public policy, and because of the harm it causes to consumers, greatly outweighs any benefits of such conduct or practices it might assert. The Honda Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiff Price and members of the California Sub-Class not only from making fully informed decisions about whether to purchase or lease Class Vehicles and/or the defective airbag systems installed in them and/or the price to be paid to purchase or lease them, but also prevents, or greatly reduces their value in, re-sale.

274.   Plaintiff Price and members of the California Sub-Class have suffered injuries in fact, including the loss of money or property, as a result of the Honda Defendants' unfair, unlawful, and/or deceptive practices. As set forth above, Plaintiff Price and members of the California Sub-Class, in purchasing or leasing Class Vehicles with the defective airbag systems installed in them, relied on the misrepresentations and/or omissions of the Honda Defendants with respect to the safety and reliability of the vehicles. Had Plaintiff Price and members of the California Sub-Class known the truth, they would not have purchased or leased their vehicles and/or paid as much for them.

275.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of the Honda Defendants' businesses. The Honda Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated.

276.   As a direct and proximate result of the Honda Defendants' unfair and deceptive practices, Plaintiff Price and members of the California Sub-Class have suffered and will continue to suffer actual damages.

277.    Plaintiff Price and members of the California Sub-Class request that this Court enter such orders or judgments as may be necessary to enjoin the Honda Defendants from continuing their unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief set forth below.

278.    Plaintiff Price and members of the California Sub-Class also request equitable and injunctive relief in the form of Court supervision of the Honda Defendants' numerous recalls of the various Class Vehicles and/or the defective airbag systems installed in them, to ensure that all affected vehicles are recalled and that the recalls properly and adequately cure the dangers and risks posed.

## III.    Minnesota Sub-Class Claims

### COUNT 11

### Breach of the Implied Warranty of Merchantability, Against

### TRW Defendants and Hyundai Defendants

### (On behalf of the Minnesota Sub-Class)

279.    In the event the Court declines to certify a Nationwide Class under the Magnuson-Moss Warranty Act, this claim is brought by Plaintiff Bliss only on behalf of the Minnesota Sub-Class against TRW Defendants and Hyundai Defendants.

280.    TRW Defendants and Hyundai Defendants are and were at all relevant times merchants with respect to motor vehicles and/or ACUs within the meaning of Minn. Stat. § 336.2-314 and Minn. Stat. § 336.2A-212.

281.    A warranty that the Class Vehicles and/or the Defective ACUs installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Minn. Stat. § 336.2-314 in the case of sale transactions and pursuant to Minn. Stat. § 336.2A-212 in the case of lease transactions.

282.    The Class Vehicles and/or the Defective ACUs installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and ACUs are used. Specifically, they are inherently

defective and dangerous in that the Defective ACUs may fail to deploy a vehicle's safety systems in the event of a collision.

283. TRW Defendants and Hyundai Defendants were provided notice of these issues by their knowledge of the ACU Defect, by customer complaints, by numerous complaints filed against them and/or others, by internal investigations, and by numerous individual letters and communications sent by consumers before or within a reasonable amount of time after investigations were launched, recalls were issued, and the allegations of the ACU Defect became public.

284. As a direct and proximate result of TRW Defendants' and Hyundai Defendants' breach of the warranties of merchantability, Plaintiff Bliss and the Minnesota Sub-Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

A.    An order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23;

B.    A declaration that the ACUs in Class Vehicles are defective;

C.    An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and such other injunctive relief that the Court deems just and proper;

D.    An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

E.    An award to Plaintiffs and Class Members for the return of the purchase or lease prices of the Class Vehicles, with interest from the time it was paid, for the

1  reimbursement of the reasonable expenses occasioned by the sale, for damages and

2  for reasonable attorney fees;

3      F.    A Defendant-funded program, using transparent, consistent, and

4  reasonable protocols, under which out-of-pocket and loss-of-use expenses and

5  damages claims associated with the Defective ACUs in Plaintiffs' and Class

6  Members' Class Vehicles, can be made and paid, such that Defendants, not the Class

7  Members, absorb the losses and expenses fairly traceable to the forthcoming recall of

8  the vehicles and correction of the Defective ACUs;

9      G.    A declaration that Defendants must disgorge, for the benefit of Plaintiffs

10  and Class Members, all or part of the ill-gotten profits they received from the sale or

11  lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

12      H.    An award of attorneys' fees and costs, as allowed by law;

13      I.    An award of prejudgment and post judgment interest, as provided by

14  law;

15      J.    Leave to amend this Complaint to conform to the evidence produced at

16  trial; and

17      K.    Such other relief as may be appropriate under the circumstances.

18                      **<u>DEMAND FOR JURY TRIAL</u>**

19      Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

20  demand a jury trial as to all issues triable by a jury.

21  Dated:  May 21, 2019              **Weston, Garrou & Mooney**
                                     John H. Weston
22                                   Jerome H. Mooney
                                     G. Randall Garrou
23

24                              By:  /s/_____
25                                   G. Randall Garrou

26

27

28

*To be Admitted Pro Hac Vice:*

Richard M. Hagstrom, MN Bar No. 39445
*rhagstrom@hjlawfirm.com*

Michael R. Cashman, MN Bar No. 206945
mcashman@hjlawfirm.com

Gregory S. Otsuka, MN Bar No. 0397873
gotsuka@hjlawfirm.com

8050 West 78th Street
Edina, Minnesota  55439
Tel: (952) 941-4005
Fax:  (952) 941-2337

*Attorneys for Plaintiffs and Proposed Classes*